1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10    CALLY LERVICK,                         CASE NO. C13-2212 MJP

11                    Plaintiff,              FINDINGS OF FACT AND
                                             CONCLUSIONS OF LAW
12           v.

13    HARTFORD LIFE AND ACCIDENT
      INSURANCE COMPANY,
14
                      Defendant.
15

16
             THIS MATTER comes before the Court on the Parties' motions for judgment on the
17
      record pursuant to Fed. R. Civ. P. 52.  (Dkt. Nos. 15, 19.)  After reviewing and considering the
18
      Parties' briefing and all related papers, the Court makes and enters the following Findings of
19
      Fact and Conclusions of Law.
20
                            I.      FINDINGS OF FACT
21
             Based on the evidence presented in the record, the Court makes the following findings of
22
      fact:
23
      /
24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 1

<u>Parties and Background</u>

1.      Plaintiff Cally Lervick worked as a senior finance manager for Totem Ocean Trailer Express, a subsidiary of Saltchuk Resources, Inc., until January 28, 2012.  (Dkt. No. 16-2 at 10-12.)

2.      Plaintiff is eligible to receive disability benefits under Defendant Hartford Life and Accident Insurance Company's long-term-disability benefits policy, Policy Number GLT-678897, sold by Defendant to Plaintiff's former employer.  (Dkt. No. 16-2 at 10-12.)

3.      Plaintiff was a dedicated employee who worked diligently in a challenging position and enjoyed her job before her illness.  (Dkt No. 20-1 at 13-18.)

4.      Although building for some time, Plaintiff's fatigue began to interfere with her work in 2011 and she sought medical attention for the problem.  (Dkt. No. 16-2 at 2-3, 25-31.)

5.      Plaintiff began seeing Dr. Brunsvold at the Polyclinic on October 21, 2011, prior to a chronic fatigue diagnosis, regarding her fatigue problems.  (Dkt. No. 16-2 at 2-3.)

6.      Dr. Brunsvold ordered extensive testing and referred Lervick to several doctors for specialized evaluations, including a sleep study, blood work, a rheumatologic evaluation, an endocrinology work up, a colonoscopy and an esophagogastroduodenoscopy.  Based on the results from various tests and the opinions of various doctors and naturopaths, Lervick began a series of treatments, including Ritalin, B-12 injections, Vitamin D supplements, acupuncture, cognitive behavioral therapy, and homeopathic remedies.  (Dkt. No. 16-2 at 25-31; 20-3 at 102-06; 20-4 at 2-4; 20-5 at 53, 72-74.)

7.       Lervick went to the Chronic Fatigue Syndrome Clinic in February 2012, where Dr. Edwards confirmed a diagnosis of Chronic Fatigue Syndrome ("CFS") and made several treatment recommendations.  (Dkt. No. 20-1 at 30.)

8.      Between January 2012 and June 2012, Lervick's employer supported her short-term-disability leave until her Family Medical Leave Act leave had been exhausted, paying one hundred percent of her salary until she would become eligible for long-term-disability benefits. (Dkt. No. 20-1 at 27.)

Application for Long-Term-Disability Benefits

9.      Plaintiff applied for long-term-disability benefits from Defendant in June 2012.  Plaintiff also applied for Social Security Disability ("SSD") benefits after Defendant advised her that Social Security "is [the] primary provider for disability and [Hartford] pays secondary." (Dkt. No. 20-1 at 7.)

10.      In support of Plaintiff's application, Dr. Brunsvold made an attending physician's statement dated June 2012. (Dkt. No. 16-2 at 3.)  In that opinion, Dr. Brunsvold found Plaintiff to be limited to sitting for one hour at a time for one hour per day, no standing, and walking for forty minutes at a time for forty minutes per day. (Id.)  Dr. Brunsvold also noted that Plaintiff had been diagnosed with chronic fatigue at the Chronic Fatigue Center, and opined that "stress and anxiety will worsen chronic fatigue symptoms of confusion." (Id.)

11.      In conjunction with Plaintiff's application, Defendant procured a review of Plaintiff's medical records by Dr. Cooper dated September 18, 2012. (Dkt. No. 16-2 at 5-8.)

12.      Dr. Cooper found Plaintiff to be not limited based on his conclusion that "symptoms/findings do not support any diagnosis that is leading to impairment or causing restrictions and limitations." (Dkt. No. 16-2 at 5-8.)  He made this conclusion because "[t]here were no focal findings on exam or positive findings on blood tests that support the claimant's complaint of fatigue" and "[t]here are no physical findings on exams by Brunsvold or testing that would explain the claimant's subjective symptom of chronic fatigue." (Id.)

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 3

13.     Defendant denied Plaintiff's claim in a letter dated September 27, 2012.  (Dkt. No. 16-2 at 10-12.)

14.     In conjunction with her initial application for SSD benefits, the Social Security Administration ("SSA") procured record reviews from Drs. Rubio and Thuline and an examination of Plaintiff by Dr. Anderson.

15.     Dr. Anderson concluded that she "cannot make a case for any sort of debilitating psychiatric condition" but opined that Plaintiff "would likely have marked difficulty concentrating on tasks, persisting at tasks, and completing tasks in a timely fashion over the course of a work day" because of her CFS.  (Dkt. No. 16-2 at 25-31.)  She opined this "would likely result in significant absenteeism."  (Id.)

16.     Drs. Rubio and Thuline opined that based on the records before them, Plaintiff's limitations would not prevent her from performing work.  (Dkt. Nos. 16-2 at 45-47; 20-1 at 11-12.)  Dr. Rubio opined that Plaintiff was partially credible.  (Id.)

17.     SSA denied Plaintiff's claim and denied reconsideration in a letter dated January 24, 2013.

18.     Plaintiff sought testing from Dr. Lapp, a CFS specialist in North Carolina, on December 3, 2012.

19.     Dr. Lapp evaluated Plaintiff's prior medical records and history, and performed testing and an examination.  (Dkt. No. 20-5 at 61-64.)  Dr. Lapp concluded that Plaintiff had CFS under both the 1994 CDC criteria and the 2003 Canadian criteria.  (Id.)  Dr. Lapp opined that cardio-pulmonary exercise testing placed her in the "mildly impaired" category, and that her anaerobic threshold results showed her to be "markedly limit[ed]" in her ability to exert. (Dkt. No. 20-1 at

37.)  Dr. Lapp also found temperature abnormalities which "suggest[] a failure of the neuroendocrine system and inability to tolerate mental, emotional, or physical stressors."  (Id.)

20.     Plaintiff sought testing and examinations from Drs. Becker, White, and Jimenez around January of 2013.

21.     Dr. Becker saw Plainitff for a performance-based physical capacity evaluation on January 14 and 15, 2013.  (Dkt. No. 20-1 at 38-39.)  Dr. Becker opined that the "clinical physiological swelling and the excessive work physiological response profiles with extended recovery to resting shows that the examinee should be considered work intolerant.  The physiological response shows that competitive and predictable sustained work is absent for all levels of category according to the Dictionary of Occupational Titles."  (Id.)  Dr. Becker also opined that Lervick had been exerting maximum effort during the testing.  (Dkt. No. 20-1 at 94-97.)  Dr. Becker opined that his findings were consistent with Dr. Lapp's, who also found abnormal temperature responses and concluded that Plaintiff would be "markedly limit[ed]" in her ability to exert.  (Dkt. Nos. 20-5 at 89, 20-1 at 37.)

22.     Dr. White concluded that Plaintiff would be prevented from working because of her CFS.  (Dkt. No. 20-2 at 2-37.)  Dr. White concluded that the sum of the cognitive impairments he found in his testing "would prevent [Plaintiff] from performing work that is comparable to the level of work that she performed at Saltchuk.  In particular, problems with working memory, high-level math, executive functioning, verbal memory, attentional problems, and speed of mental processing would prevent her from performing this work."  (Id. at 30.)

23.     Dr. Jimenez conducted a complete rheumatologic exam, reviewed medical records, and concluded that Plaintiff had CFS.  (Dkt. No. 20-1 at 83-91.)  Dr. Jimenez noted that several doctors had ruled out other conditions consistent with CDC CFS diagnosis methodology, and

1   that testing done by Drs. Becker, Lapp, and White showed objective evidence of her limitations,

2   stating that her test results "weren't borderline but were very, very much in the abnormal range."

3   (Id. at 87.)  Dr. Jimenez concluded that "[o]n a more probable than not basis, my opinion is that

4   she is not capable of competitive and predictable work.  I believe that she is disabled by her

5   fatigue." (Id. at 90.)

6   24.     Dr. Crowley, Plaintiff's primary care provider at Virginia Mason Hospital, submitted a

7   letter in support of disability benefits in June 2013.  (Dkt. No. 16-3 at 38.)

8   25.     When Plaintiff appealed Defendant's denial of her claim, Defendant sought record

9   reviews by Dr. Sullivan and Dr. Kramer.  Although the policy allows Defendant to examine

10   Plaintiff through an insurance medical examination, Defendant elected to procure record reviews

11   only.  (Dkt. No. 16-1 at 17.)

12   26.     Dr. Sullivan was asked to opine on Plaintiff "from a mental illness standpoint only."

13   (Dkt. No. 20-1 at 81.)  Dr. Sullivan concluded that while Plaintiff experienced some reactive

14   depression and anxiety in association with her CFS diagnosis and other psychosocial stressors,

15   there was "no medical evidence to support a psychological diagnosis including major depressive

16   disorder or generalized anxiety disorder."  (Id.)  Dr. Sullivan also opined on Dr. White's

17   neuropsychological testing and evaluation, finding the test results were "within normal limits and

18   therefore there is no evidence of a cognitive disorder." (Id. at 81-82.)  Dr. Sullivan therefore

19   disagreed with Dr. White's conclusions, based on the testing, that Plaintiff displayed "weakness"

20   and "problems" in a number of cognitive areas.  (Id.)

21   27.     Dr. Kramer opined that Plaintiff "does not have any physical abnormalities, she only has

22   subjective complaints," and that "from a physical standpoint, there are no physical abnormalities

23   that would impact claimant's ability to work." (Dkt. No. 20-1 at 78-79.)  Dr. Kramer disagreed

24

1    with Dr. Becker's test results and conclusions, stating that "there were no reports of fatigue or

2    inability to perform the tasks" and noting that she was able to participate in the second day of

3    lengthy testing.  (Id.)  Also in reference to Dr. Becker's exam, Dr. Kramer stated that "[b]ilateral

4    limb temperature is normal and stable indicating there are no autonomic abnormalities," (Id. at

5    78), despite Dr. Becker having found temperature abnormalities for the thigh and the leg below

6    the patella, (Id. at 64-65).

7    28.    Plaintiff sought further review of her SSD claim.  SSA procured a record review by Dr.

8    Mee and retained Dr. Nelp as an independent medical expert to testify during Plaintiff's hearing

9    before SSA administrative law judge Sloan ("ALJ Sloan").

10   29.    Based on the record, Dr. Mee opined that Plaintiff's limitations would not prevent her

11   from performing work.  (Dkt. No. 16-3 at 33, 38.)

12   30.    At Plaintiff's in person hearing before ALJ Sloan, Dr. Nelp opined that Plaintiff "retains

13   the physical functional capacity to perform sedentary work."  (Dkt. No. 16-3 at 33, 38.)

14   31.    On October 28, 2013, ALJ Sloan awarded Plaintiff SSD benefits, finding that Plaintiff's

15   medically determinable impairment, CFS, could reasonably be expected to produce the alleged

16   symptoms, and Plaintiff's statements concerning the intensity, persistence and limiting effects of

17   the symptoms were generally credible.  (Dkt. No. 20-1 at 29.)

18   32.    ALJ Sloan concluded that Plaintiff has the residual functional capacity to perform

19   sedentary work as defined in 20 CFR 404.1567(a), but not the residual functional capacity to

20   perform her past work as an investment analyst.  (Dkt. No. 20-1 at 29-31.)  ALJ Sloan also

21   concluded that Plaintiff "will miss more than one day of work per month" due to exacerbation of

22   symptoms from her fatigue.  (Id. at 28.)

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 7

1    33.    Defendant denied Plaintiff's appeal by letter dated October 16, 2013.  (Dkt. No. 16-3 at

2    23.)

3    34.    Defendant did not perform or solicit a vocational evaluation of Plaintiff in association

4    with her claim.

5    35.    Defendant did not perform an evaluation of the requirements of Plaintiff's occupation as

6    a senior finance manager in association with her claim.

7                                        Medical Evidence

8    36.    Chronic Fatigue Syndrome ("CFS") is a clinically defined condition characterized by

9    severe disabling fatigue and a combination of symptoms that prominently features self-reported

10   impairments in concentration and short-term memory, sleep disturbances, and musculoskeletal

11   pain.  See Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 677 (9th Cir. 2011).

12   37.    Diagnosis of CFS can be made only after alternative medical and psychiatric causes of

13   chronic fatiguing illness have been excluded, or ruled out.  No pathognomonic signs, blood tests,

14   or other objective laboratory diagnostic tests for this condition have been validated in scientific

15   studies, and no definitive treatments for it exist.  Id.

16   38.    Significant weight is accorded to the opinions of Drs. Brunsvold, Anderson, Lapp,

17   Becker, Jimenez, and Sullivan.

18        a.    Dr. Brunsvold was Plaintiff's treating physician before the benefits application

19   process began, and worked with Plaintiff to rule out other conditions and focus the inquiry on

20   CFS diagnosis and treatment.

21        b.    Dr. Anderson performed an extensive evaluation at SSA's request, and her

22   opinions on both the presence of independent mental illness and on the cognitive limitations

23   caused by CFS are consistent with those of the other examining physicians.

24

c.      Dr. Lapp, a CFS specialist, and Dr. Becker both performed extensive testing, found similar physical abnormalities such as temperature aberrations, and concluded that the symptoms were consistent with CFS and would limit Plaintiff's ability to work.

d.      Dr. Jimenez conducted a complete rheumatologic exam and reviewed Plaintiff's records, concluding that Plaintiff had CFS and that the path to her diagnosis was correct under the CDC diagnosis methodology.

e.      Dr. Sullivan performed a record review to evaluate Plaintiff from a mental illness standpoint, and concurred with Dr. Anderson's findings of no independent mental illness.  Dr. Sullivan also reasonably cast doubt on Dr. White's conclusions based on his test results, doubt which was shared by ALJ Sloan in evaluating Dr. White's opinion.  (Dkt. No. 20-1 at 31.)

39.      Some weight is accorded to the opinions of Drs. Edwards, Crowley, Rubio, Thuline, Mee, and Nelp.

a.      Dr. Edwards examined Plaintiff, agreed that CFS best explained her symptoms, and worked with her on a treatment plan; Dr. Edwards did not, however, opine on what limitations would be caused by her diagnosis and treatment.

b.      Dr. Crowley, a general practitioner, was Plaintiff's treating physician in 2013. While she supported Plaintiff's application for benefits, Dr. Crowley did not conduct any independent testing.

c.      Drs. Rubio and Thuline performed record reviews early on, without the benefit of all of Plaintiff's subsequent thorough testing, and thus have not opined on the medical evidence as it currently stands.

1    d.    Drs. Mee and Nelp performed record reviews with most of the medical evidence

2  now available already in the record, but did not examine Plaintiff and did not provide sufficiently

3  detailed explanations of their opinions or conclusions.

4  40.    Little weight is accorded to the opinions of Drs. White and Kramer, and no weight is

5  accorded to Dr. Cooper's opinion.

6    a.    Dr. White performed extensive testing which placed Plainitff in average and high

7  average categories, yet opined that Plaintiff's limitations would prevent her from performing

8  "even a simple repetitive job that did not present her with high-level demands," a conclusion

9  which is not supported by the opinions of other doctors.  (Dkt. No. 20-2 at 30.)

10    b.    Dr. Kramer's record review appears to dispute a diagnosis of CFS based on

11  physical tests, indicates that she misread or misunderstood the Dr. Becker opinion she was

12  evaluating, and appears to contend that Plaintiff's participation in a lengthy fatigue test –

13  required to prove that Plaintiff's CFS limits her ability to work – and the fact that she showed

14  maximum effort during that test, is itself evidence that she in fact does not have a fatigue

15  disorder.

16    c.    Dr. Cooper performed a record review very early on, without most of the medical

17  evidence now in the record, and like Dr. Kramer, contests whether Plaintiff has CFS based on the

18  lack of focal findings or positive findings on blood tests.  Dr. Cooper's opinion thus contravenes

19  both the CDC's published understanding of CFS and Ninth Circuit law.  See Salomaa v. Honda

20  Long Term Disability Plan, 642 F.3d 666, 677 (9th Cir. 2011).

21  41.    Physicians who physically examined Plaintiff agree on a CFS diagnosis.  (Dkt. Nos. 16-2

22  at 2-3, 6, 25-31; 16-3 at 38; 20-1 at 37-39, 83-91, 94-97; 20-2 at 2-37; 20-5 at 61-64, 89.)

23

24

42.     Physicians who examined Plaintiff agree she made a good effort during testing and do not suspect malingering. (Dkt. Nos. 16-2 at 2-3, 6, 25-31; 16-3 at 38; 20-1 at 37-39, 83-91, 94-97; 20-2 at 2-37; 20-5 at 61-64, 89.)

43.     Plaintiff's employer, her examining physicians, and ALJ Sloan found Plaintiff to be credible regarding her symptoms. (Dkt. Nos. 16-2 at 2-3, 6, 25-31; 16-3 at 38; 20-1 at 29, 37-39, 83-91, 94-97; 20-2 at 2-37; 20-5 at 61-64, 89.)

44.     Physicians who examined Plaintiff found her CFS would lead to problems with stamina and mental acuity.  (Dkt. Nos. 16-2 at 2-3, 6, 25-31; 16-3 at 38; 20-1 at 37-39, 83-91, 94-97; 20-2 at 2-37; 20-5 at 61-64, 89.)

45.     Plaintiff will occasionally and unpredictably miss work several times per month due to CFS and its symptoms.

46.     Plaintiff's ability to concentrate and mental acuity are impaired by CFS and its symptoms.

## II.      CONCLUSIONS OF LAW

1.      To the extent that any of the foregoing Findings of Fact are deemed to be conclusions of law, they are incorporated into these Conclusions of Law.

2.      This Court has jurisdiction under 28 U.S.C. § 1332 and 29 U.S.C. § 1001 et seq.

3.      Venue is proper in the Western District of Washington.

4.      The standard of review by this Court is de novo.  (Dkt. No. 27.)

5.      Plaintiff has the burden of proving her entitlement to benefits by demonstrating by a preponderance of the evidence that any applicable impairments are disabling under the terms of the policy.  See Muniz v. Amec Construction Management, 623 F.3d 1290, 1294 (9th Cir. 2010).

6.      While the disability decision of the Social Security Administration is not binding on this Court or on a determination of whether Plaintiff is entitled to benefits under the policy, ALJ Sloan's analysis and conclusions are persuasive evidence of disability and the Court may consider them.  See Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 679 (9th Cir. 2011).

7.      Unlike Social Security Disability claims, ERISA claims are not governed by the treating physician rule, i.e., the opinions of a claimant's treating physicians are not automatically accorded special deference.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003). Nevertheless, the Court still considers the opinions of treating physicians to the extent that they are persuasive, and weighs them accordingly.

8.      Plaintiff's motion to strike, contained in her surreply (Dkt. No. 25), is denied because it seeks to strike characterizations of the record by Defendant.  The Court notes, however, that it has independently reviewed the record and reached its own conclusions about the facts contained therein.

9.      This dispute is governed by the portion of Defendant's long-term-disability policy that defines 'disabled' as being prevented from performing one or more of the essential duties of Plaintiff's occupation.  (Dkt. No. 16-1 at 20.)

10.      Occasionally and unpredictably missing work due to CFS and its symptoms prevents Plaintiff from performing an essential duty of her occupation, namely, being at work for the number of hours in her regularly scheduled workweek.  (Dkt. No. 16-1 at 20.)

11.      Inability to concentrate and mental fatigue prevent Plaintiff from performing at least one essential duty of her occupation as a financial analyst.  (Dkt. No. 16-1 at 20.)

12.     Plaintiff is found to be disabled under the long-term-disability policy at issue and therefore is entitled to disability benefits.

13.     Plaintiff is awarded back benefits.

14.     Plaintiff is awarded her attorney's fees and costs, and must petition the Court for a determination of fees and costs within thirty days if the Parties cannot agree on a determination.

15.     Plaintiff's claim is remanded to Hartford Life and Accident Insurance Company to determine eligibility for future benefits.


    The clerk is ordered to provide copies of this order to all counsel.

    Dated this 9th day of December, 2014.


Marsha J. Pechman
Chief United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 13